UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                           Cr. Case No. 11-20704

                                               Honorable Sean Cox

D-1 Gerald Bass,

    Defendant.
_____/

**MEMORANDUM OPINION SETTING FORTH THE COURT'S FINDING
REGARDING SUPERVISED RELEASE ENHANCEMENT**

In this action, Defendant Gerald Bass ("Bass") was charged with: 1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count One of the First Superceding Indictment); 2) Access Device Fraud, Aiding and Abetting, in violation of 18 U.S.C. §§ 1029(a)(2) and 2 (Count Two of the First Superceding Indictment); 3) Theft of Identity, Aiding and Abetting, in violation of 18 U.S.C. §§ 1028(a)(7) and 2 (Count Three of the First Superceding Indictment); and 4) Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A (Count Four of the First Superceding Indictment).

The First Superceding Indictment also charged that, with respect to Counts One, Two, and Three, Bass engaged in that unlawful conduct while he was on supervised release in the Eastern District of Michigan in Criminal Case Number 02-80364 and that Bass is therefore subject to the enhanced penalty provisions of 18 U.S.C. § 3147(1).

Bass was scheduled to go to trial on July 31, 2012.

Prior to trial, the Government submitted a proposed verdict form that, with respect to Counts One, Two, and Three, would have the jury make an additional finding as to whether Bass committed the conduct at issue while he was on supervised release. (D.E. No. 94). Although the United States Court of Appeals for the Sixth Circuit has not yet ruled on the issue, the Government took the position that because Bass's supervised release status gives rise to a sentencing enhancement under 18 U.S.C. § 3147 with the potential to subject the defendant to penalties in excess of the statutory maximums of the charged crimes, the most prudent course would be for the jury to make a factual finding concerning Bass's supervised release status. *See, e.g., United States v. Confredo*, 528 F.3d 143, 145 (2d Cir. 2008); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

On the first day of trial, Defense Counsel orally suggested that the Court could bifurcate the trial and have the jury make a finding as to the supervised release enhancement only if it first found Bass guilty as to Counts One, Two, or Three. Defense Counsel made that suggestion because Defendant did not want the jury to hear testimony that Bass was on supervised release from a prior conviction. The Government opposed the request, asserting that bifurcation was not necessary and that appropriate limiting instructions would be sufficient to eliminate any prejudice to Bass. The Court ordered the parties to file briefs concerning the bifurcation issue no later than 6:00 p.m. on August 1, 2012. (D.E. No. 98). The Government filed a brief opposing bifurcation. (D.E. No. 99). Defendant did not file a brief.

On August 2, 2012, the parties advised the Court that they had come to an agreement on

the issue. The parties agreed that the supervised release sentencing enhancement would be bifurcated and that, if the jury found Bass guilty as to Counts One, Two, or Three, then the Court would make a finding on the issue of whether the conduct at issue occurred while Bass was on supervised release, based upon the evidence presented during trial, and some additional testimony from Probation Officer Dion Thomas that would be heard by the Court without the jury present. Thereafter, on the record, Bass made a knowing, voluntary waiver of his right to have a jury find, beyond a reasonable doubt, that he committed the crimes while he was on supervised release.

The jury trial commenced on July 31, 2012. On August 7, 2012, the jury found Bass guilty on all four counts. Accordingly, this Court must now render its finding as to whether Bass committed the conduct that forms the basis for Counts One, Two, or Three while he was on supervised release.

This Court hereby finds that the Government has met its burden of proving, beyond a reasonable doubt, that Bass committed Counts One, Two, and Three while Bass was on supervised release in the Eastern District of Michigan in Criminal Case Number 02-80364.

Although this Court need only make a general finding as to this issue (*see* FED. R. CRIM. PRO. 23(c); 2 FED. PRAC. & PROC. CRIM. §374 (4th Ed.)), the Court also includes here some[1] specific factual findings.

---

[1] Voluminous evidence was presented at trial and the majority of the fraudulent transactions occurred while Bass was on supervised release. The Court is not including here factual findings as to all of Bass's unlawful conduct that occurred while Bass was on supervised release.

Officer Dion Thomas is a United States Probation Officer. Bass was on supervised release in Criminal Case Number 02-80364 from January 21, 2011, until October 11, 2011. Officer Thomas oversaw Bass's supervised release during 2011.

During Bass's term of supervised release, from January 21, 2011 through October 11, 2011, Bass resided at 12611 Ilene Street in Detroit, Michigan, his home telephone number was (313) 931-3924, and his personal cellular telephone number was (313) 268-6505.

Bass devised several different schemes to defraud victims' credit accounts and Bass recruited several individuals, including Isaiah Price ("Price"), to commit those financial crimes with him.

Price met Bass approximately five years ago, at Bass's residence on Ilene Street. Price started worked with Bass to commit financial crimes in September of 2011.

Bass would obtain "profiles" on various individual victims from unknown sources. Each of these written profiles would contain a given individual's personal information, including his or her date of birth, social security number, employer, current address, etc.

Bass would then take the profile and, via computer and using the internet, would visit various internet websites to obtain more detailed information about that individual, such as his or her former addresses and credit scores, by entering either a drivers license number or a social security number from the profile. Bass would then view the existing credit accounts that individual had open at various retail stores, such as J.C. Penney, Nordstrom, Lowes, and Home Depot.

Among other things, Bass would contact various companies, impersonate a victim whose

profile he had obtained, and ask that another individual be added as an authorized user on the credit account of the victim. Bass used both his home telephone and his cellular telephone to make those calls. Bass would then go to the store at issue, with others he had recruited, such as Price, to fraudulently purchase merchandise on the credit account of the victim. Bass would either tell Price what merchandise to purchase or would help him pick out the merchandise to be purchased. The merchandise that Bass and Price fraudulently obtained was then either sold to others who had ordered the merchandise from Bass or was taken to drug houses where it was sold or traded for drugs.

For example, in September of 2011, while Bass while on supervised release, Bass and Price made fraudulent purchases on a credit account at J.C. Penney that belonged to a victim named Lorraine Wesley. Bass called J.C. Penney from his home telephone and, by impersonating the victim, had "Rodney Northington" added as an authorized user to Lorraine Wesley's credit account. Bass then provided Price with a counterfeit Mississippi driver's license and social security card in the name of Rodney Northington. (Govt.'s Exs. 44c and 44d). On September 13, 2011, Bass and Price then went to a J.C. Penney store in Ann Arbor, Michigan, to make fraudulent purchases of merchandise on Lorraine Wesley's account. With respect to the purchases at the J.C. Penney store in Ann Arbor, Michigan on September 13, 2011, Bass provided Price with the counterfeit identification, Bass drove Price to and from the J.C. Penney store, Bass accompanied Price into the store, and Bass took the merchandise from Price that was fraudulently purchased on Lorraine Wesley's credit account. The merchandise that Bass and Price fraudulently obtained on Lorraine Wesley's credit account in September of 2011 totaled

more than $1,000.

In other instances, Bass would determine the retail stores where a given victim had existing credit accounts. Bass would then create a counterfeit identification in the name of the victim. Bass would then provide that counterfeit identification to one of his co-conspirators, who would impersonate the victim at a retail store and purchase merchandise on that victim's account.

For example, in September of 2011, while Bass was on supervised release, Bass and Price made fraudulent purchases on a credit account at Nordstrom that belonged to a victim named Ian Anspach. Bass obtained a profile with Ian Anspach's personal information. Bass then took Price to CVS and took a photograph of Price. Bass then had a counterfeit Michigan State driver's license made with Ian Anspach's personal information and the photograph of Price. (Govt.'s Ex. 44a). Bass then called Nordstrom and, by impersonating Ian Anspach and giving Ian Anspach's personal information to the representative on the telephone, obtained the amount of available credit on Ian Anspach's credit account. In September of 2011, Bass and Price then went to the Nordstrom store in Novi, Michigan so that Price could purchase merchandise, using the false identification Bass provided to him, on Ian Anspach's Nordstrom credit account. With respect to the purchases at Nordstrom, Bass provided Price with the false identification, Bass drove Price to the Nordstrom store, Bass accompanied Price into the Nordstrom store, and Bass took the merchandise from Price that was fraudulently purchased on Ian Anspach's credit account. The merchandise that Bass and Price fraudulently obtained on Ian Anspach's credit account in September of 2011 totaled more than $1,000.

Accordingly, based upon the evidence presented, this Court finds that the Government has met its burden of proving, beyond a reasonable doubt, that Bass committed Counts One, Two, and Three of the First Superceding Indictment while Bass was on supervised release in the Eastern District of Michigan in Criminal Case Number 02-80364.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 10, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 10, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager