UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,

v.                                              Criminal Case No. 11-20704
                                              Civil Case No. 16-13559

Gerald Bass,

                                              Sean F. Cox
    Defendant/Petitioner.             United States District Court Judge

_____/

**OPINION & ORDER
DENYING MOTION UNDER 28 U.S.C. § 2255**

This is a habeas petition made pursuant to 28 U.S.C. § 2255. Petitioner Gerald Bass ("Bass") filed his habeas petition acting *pro se*, asserting that he is entitled to relief from his convictions and sentences for identity theft and other financial crimes, based on the ineffective assistance of his trial and appellate counsel. Specifically, Bass's motion argues that his trial counsel was ineffective because counsel failed to object to testimony about hundreds of "medical profiles" that this Court suppressed prior to trial and failed to negotiate a more favorable plea offer with the Government. Bass also argues that his subsequent counsel failed to sufficiently argue sentencing disparities and failed to raise an argument on appeal. The motion was fully briefed by the parties. Because the files and records of the case conclusively show that Bass is entitled to no relief as to the claims in this § 2255 motion, an evidentiary hearing is not necessary and the matter is ripe for a decision by this Court. For the reasons set forth below, the Court denies the motion and declines to issue a certificate of appealability.

## BACKGROUND

Bass, along with several Co-Defendants, including Defendant Isaiah Price ("Price"), was charged with committing identity theft and other financial crimes.

Bass was originally represented by attorney Rita Chastang, and then and attorney Edward Wishnow. At Bass's request, Mr. Wishnow filed a motion to withdraw because Bass desired a new attorney. This Court granted that motion and a new attorney, Anthony Chambers, was appointed to represent Bass.

During pretrial proceedings, Bass's Counsel (Mr. Chambers) filed a Motion to Suppress, which this Court granted in part and denied in part. The Court granted the motion to the extent that the Court suppressed certain evidence found during the execution of a search warrant on Ilene Street in Detroit, Michigan on November 2, 2011. (*See* D.E. No. 79). Among the evidence suppressed were multiple documents that had been generically identified in the Incident Report/Inventory as "victim profile sheets." or "victim profiles." (*Id*. at Pg ID 393). The Motion to Suppress was denied in all other respects.

This Court held the Final Pretrial / Plea Cutoff Conference as to Bass on June 25, 2012. (*See* Docket Entry No. 190, 6/25/12 Tr.). At that time, the Government noted on the record the offer that it had made to Bass, and Bass rejected that offer:

> THE COURT: This is the final pretrial, plea cut-ff date. Has the government made an offer?
>
> MS. OBERG: We did make an offer, Your Honor.
>
> We offered Mr. Bass the opportunity to plead to Count One, the conspiracy count. And the guidelines, because his criminal history is a category six, the guidelines were, with acceptance of responsibility, 84 to 105 months, and 24-month additional sentence consecutive to that, because of the aggravated felony.

>So it was Count One and Count Five; aggravated identity theft and conspiracy to commit wire fraud.
>
>THE COURT: Mr. Chambers, did you get that offer and were you able to discuss it with your client?
>
>MR. CHAMBERS: Yes, I have, Your Honor.
>
>THE COURT: And what is your client's position?
>
>MR. CHAMBERS: Sir, are you interested in the Rule 11 Plea Agreement?
>
>DEFENDANT BASS: No, not at this time.
>
>THE COURT: Well, this is the time.
>
>DEFENDANT BASS: No.
>
>THE COURT: Is that a no?
>
>DEFENDANT BASS: No.

(*Id.*).

After rejecting the Government's plea offer, Bass ultimately proceeded to a jury trial and was the only defendant that did so. Mr. Chambers represented Bass at trial.

Bass's Co-Defendant Price testified at Bass's trial. Among other things, the Government elicited testimony from Price regarding how Bass possessed and used various "profiles" to perpetrate his fraudulent scheme:

>Q. Now, you just described to the jury the conduct that led up to your guilty plea. When did you start working with Mr. Bass on these credit accounts?
>
>A. I started working with Mr. Bass roughly around September, the beginning of September.
>
>Q. Of what year, sir?
>
>A. Of 2011.

Q. And could you please describe how that started? How did you first start working with Mr. Bass?

A. Well, I needed money to support my son down south in Nashville, Tennessee. And he say he had a way for me to make a little bit of money, so I went – he had profiles, profiles he had of – I don't really know where he got them from, but he would make calls and act like he was that person on the telephone, and probably up they credit line or he will – he would also act like he's that person. He told them he wants to put my nephew on, Isaiah Price, for an authorized user. He's in town. He would act like that voice. If it was a lady, if it was an old man, and he would put me on and I was on these people.

. . . .

Q. Now you said that Mr. Bass had profiles?

A. Yes.

Q. Could you please tell the jury what exactly you mean by "profiles"?

A. A profile would be a medical insurance profile or it would be an insurance profile with somebody name and they social on it, or the information whether they was with Blue Cross/Blue Shield, where they worked at – where they worked at and stuff, just everything about your life is on these profiles that he had got information off of to do the scandals and stuff.

Q. And did you every actually see these profiles?

A. Yes, I did.

Q. Where did you see them?

A. I saw them at his house on Ilene.

Q. So these profiles, are they a piece of paper?

A. Yes, it's a piece of paper just like this and it had many people profiles and stuff. And sometimes we would be in hotel rooms working off the internet, off the computer, taking them here, go to various websites just set up to see how they account was, what existing accounts they had open. He went to zawu.com (phon.), then went to been verified to make sure that was the person and then itellius.com.

Q. So Mr. Bass – I just want to make sure that I'm correct. Mr. Bass had profiles?

      A.      Yes.

      Q.      And when you say "profiles," you mean that he had pieces of paper?

      A.      Uh-huh, stacks of them.

      Q.      And that those pieces of paper had people's names, addresses, Social Security numbers?

      A.      To where they worked at and – correct.

(Docket Entry No. 103 at Pg ID 704-707).

The jury found Bass guilty as to each of the four counts: 1) Count One: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; 2) Count Two: Access Device Fraud, Aiding and Abetting, in violation of 18 U.S.C. §§ 1029(a)(2)and 2; 3) Count Three: Theft of Identity, Aiding and Abetting, in violation of 18 U.S.C. §§ 1028(a)(7) and 2; and 4) Count Four: Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A.

Prior to sentencing, Bass's counsel filed a Motion for New Trial, based on the recantation of one of the Government's trial witnesses, Price. After an evidentiary hearing, the Court denied that motion in an Opinion & Order.

On May 10, 2013, this Court appointed a new attorney, Sanford Plotkin, to represent Bass because Mr. Chambers had been suspended from practicing law. That suspension stemmed from matters unrelated to Bass.

The Sentencing Memorandum filed by Mr. Plotkin on behalf of Bass argued, among other things, that Bass's "co-conspirators received sentences much lower than the guideline range recommended by the probation department for Bass" and argued that "would lead to a significant disparity in sentencing." (Docket Entry No. 158 at Pg ID 1107).

At sentencing, this Court granted the Government's request to vary upward from the

advisory Guidelines range and imposed the statutory maximum sentence of 264 months.

Bass filed a direct appeal. Bass was represented by Mr. Plotkin[1] on appeal. In his direct appeal, Bass raised the following issues: 1) whether the district court erred when it denied Bass's motion to suppress evidence recovered from his cellphone; 2) whether the district court abused its discretion by denying Bass's motion seeking a new trial based on the recanted testimony of Price; and 3) whether the district court abused its discretion by imposing a statutory maximum sentence. The United States Court of Appeals for the Sixth Circuit rejected all of those arguments and affirmed in a published opinion. *United States v. Bass*, 785 F.3d 1043 (6th Cir. Apr. 15, 2015). In affirming Bass's sentence, the Sixth Circuit explained:

> At the sentencing hearing, the district court considered and denied each of Bass's five objections to the Guidelines calculations. The court heard arguments from both parties, including Bass's reasons why an upward variance was unnecessary. The court also discussed Bass's personal characteristics and history, as well as the seriousness of the offense. *Of note, after methodically walking through each of Bass's 13 prior convictions over the past 20 years—including 11 for conduct involving identity theft, dishonesty, fraud, or deceit—the court observed that Bass had no employment record other than criminal conduct despite being "very, very bright," though "very, very manipulative." Ultimately, the court concluded that Bass had "absolutely no respect for the law" and that "[he] will continue to engage in criminal activity, and continue to engage in credit card fraud and identity theft, and continue to be a real threat to society."*
>
> Contrary to Bass's assertions, *the district court also walked through the § 3553(a) factors in detail and provided a lengthy explanation as to why an upward variance to the statutory maximum was necessary. The court weighed each factor and concluded that no sentence could deter Bass from further criminal activity.* The court also repeatedly stressed its "obligation to protect the public from further crimes by [Bass]," finding "no doubt" that Bass would go right back to engaging in credit card fraud and identity theft whenever he is released from prison. As a result, *the district court concluded that an upward variance was required to*

---

[1] Bass filed a motion for the appointment of new appellate counsel, "suggesting that the brief filed by counsel does not raise all issues requested by the defendant" but that motion was denied by the United States Court of Appeals for the Sixth Circuit. (*See* Docket Entry No. 185 at Pg ID 2353).

> *protect the public from Bass as long as possible.*
>
> Finally, the district court spent considerable time explaining its decision to vary upward to the statutory maximum. *See United States v. Payton,* 754 F.3d 375, 378 (6th Cir. 2014). ("Where the defendant or prosecutor presents non-frivolous reasons for imposing a different sentence ... [t]he sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." (quoting *Rita v. United States*, 551 U.S. 338, 356-57, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). As discussed above, the district court repeatedly emphasized its "obligation to protect the public" because of Bass's history of an inability to comply with the law. It noted that Bass "cannot comply, cannot follow the law ...[, and] continue[s] to engage in the same criminal conduct despite prior convictions." It stressed that the statutory maximum exists for cases like this, "with individuals like [Bass] who cannot and will not stop engaging in similar criminal activity," and stated that it imposed the statutory maximum because of its "obligation to protect the public from further crimes by [him]."

*United States v. Bass*, 785 F.3d at 1051 (emphasis added).

On October 4, 2016, Bass filed his Motion under 28 U.S.C. § 2255. In it, Bass argues that both his trial and appellate counsel provided ineffective assistance of counsel. He argues that Mr. Chambers provided ineffective assistance of counsel in that he: 1) failed to object or request a mistrial when the Government questioned Price about "medical profiles," and 2) failed to negotiate a plea with the Government that did not provide for an enhancement under 18 U.S.C. § 3147. Bass also argues that Mr. Plotkin, who represented him at sentencing and on direct appeal: 1) was ineffective for not sufficiently arguing sentencing disparities; and 2) failed to present a specific challenge that Bass wished to present on appeal.

The Government filed a brief in opposition to the motion and Bass filed a reply brief. Thus, the matter has been fully briefed. Because the files and records of the case conclusively show that Bass is entitled to no relief as to the claims in this § 2255 motion, an evidentiary hearing is not necessary and the matter is ripe for a decision by this Court.

**STANDARD OF REVIEW**

Petitioner's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

Defendants seeking to set aside their sentences pursuant to 28 U.S.C. section 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003). It is well established that when a defendant files a section 2255 motion, he or she must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).

**ANALYSIS**

The familiar United States Supreme Court decision in *Strickland v. Washington*, 466 U.S.

688 (1984) governs this Court's analysis of ineffective assistance of counsel claims. "In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 Fed. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, the defendant must show that "counsel's representation fell below the objective standard of reasonableness." *Lint,* 542 Fed. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Lint,* 542 Fed. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations omitted).

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 Fed. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

**I.     Trial Counsel's Failure To Object Or Request Mistrial Based On Government's Direct Examination Of Price At Trial And Appellate Counsel's Failure To Raise The Issue On**

**Appeal.**

Bass asserts that his trial counsel provided ineffective assistance when he failed to object, or request a mistrial, when Price testified at trial about how Bass possessed and used various "profiles" to perpetrate his fraudulent scheme. This claim fails because Price's testimony about Bass's uses of victim profiles, which was based on his own personal knowledge, was admissible.

Bass notes that "evidence seized during a search that has been declared unconstitutional" cannot be presented at trial. But the evidence suppressed by this Court (numerous, unspecified profiles of victims) *was not presented as evidence at trial* and Bass does not assert otherwise.

Rather, Bass appears to believe the Government could not elicit any testimony from Price (or other witnesses) that related to any victim profiles having been used in the fraudulent scheme or Bass's use of them. Bass is incorrect. Price testified that he had personal knowledge as to how he and Bass perpetrated fraud on their victims by possessing and using various profiles containing personal information. Thus, Price's testimony was admissible and Bass's trial counsel was not ineffective for not having objected to that testimony.

In addition, Bass could not establish the requisite prejudice in any event because there was ample other evidence of Bass's guilt presented at trial (including Bass's own confession).

Bass also asserts that his appellate counsel provided ineffective assistance of counsel in that he failed to raise a specific issue on appeal that Bass had asked him to raise. Bass identifies that issue as "Should the District Court have made a Sua Sponte ruling based on evidence that was suppressed, that was a specific element of the charged crime yet admitted at trial?" (D.E. No. 185 at Pg ID 2334).

It appears that Bass is again referring to Price's trial testimony about how Price and Bass

10

used profiles to commit credit card fraud. Bass appears to believe that the Court should have *sua sponte* precluded such testimony and that his appellate counsel was deficient for not raising that issue on appeal. This claim also fails because Price's testimony was admissible. Thus, Bass cannot establish deficient performance. In addition, Bass could not establish the requisite prejudice in any event.

II.     **Counsel's Alleged Failure To Negotiate A Plea That Did Not Provide For An Enhancement Under 18 U.S.C. § 3147.**

Next, Bass asserts that his trial counsel was ineffective during plea negotiations because he did not challenge the 18 U.S.C. § 3147 enhancement during the plea negotiation process. Bass argues that his trial counsel was ineffective because he should have tried to "negotiate a plea, free from error" (i.e, a plea agreement that did not include an enhancement under § 3147).

But as the Government notes in its response, and as the transcript of the June 25, 2012 Final Pretrial / Plea Cutoff Conference reflects, the plea offer made to and rejected by Bass on the date of the plea cutoff did not include an additional, consecutive sentence under the 18 U.S.C. § 3147 enhancement. Thus, Bass was offered (but rejected) precisely that which he claims effective counsel should have tried to negotiate – a Rule 11 plea agreement that did not include an enhancement under § 3147. Accordingly, Bass cannot establish deficient performance during the plea negotiations.[2]

III.    **Counsel's Alleged Failure To Sufficiently Argue Sentencing Disparities.**

Finally, Bass asserts that his counsel at sentencing (Mr. Plotkin) failed to sufficiently argue

---

[2]The Court notes that Bass's brief suggests that his trial counsel "guaranteed" Bass that he would win at trial. But Bass's own brief acknowledges that no such promise was made. (*See, e.g.*, Def.'s Br. at Pg ID 2330 stating "Counsels' words verbatim" included "'*Even if we lose*, they still have to follow the guidelines . . .'" (emphasis added).

11

sentencing disparities. Bass acknowledges that his counsel's Sentencing Memorandum discussed the issue of sentencing disparities. (D.E. No. 185 at Pg ID 2332). The record reflects that the Sentencing Memorandum filed Mr. Plotkin on behalf of Bass argued, among other things, that Bass's "co-conspirators received sentences much lower than the guideline range recommended by the probation department for Bass" and argued that "would lead to a significant disparity in sentencing." (Docket Entry No. 158 at Pg ID 1107). Nevertheless, Bass faults his counsel for "fail[ing] to create an argument on record about how other similarly situated defendants were sentenced on a district and national level." (*Id.*).

Bass has not established deficient performance by counsel at sentencing. As the Government notes, Bass has not offered the Court any examples of similarly situated defendants on a district or national level that would have aided his argument that the sentence this Court imposed would create an unwarranted sentence disparity.

Moreover, in order to prevail on this claim, Bass would have to show that there is a reasonable probability that he would have received a lesser sentence from this Court if such examples had been presented at the sentencing hearing. He cannot do so. Even if Bass's counsel had provided this Court with specific examples to support his argument that Bass should have been given a lesser sentence in order to avoid unwarranted sentencing disparities, this Court would have rejected the argument and given Bass the same sentence. That is because, with respect to this particular defendant, the Court concluded that an upward variance to the statutory maximum sentence was required in order to protect the public from Bass as long as possible.

## IV. Certificate of Appealability

For the reasons set forth above, the Court concludes that Bass is not entitled to habeas relief.

A certificate of appealability must issue before a petitioner such as Bass may appeal the district court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b).

Section 2253 provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). As the United States Supreme Court has explained this standard:

> . . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). As the Court has stated, "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Here, Bass's § 2255 Motion raised several arguments. The Court concludes that reasonable jurists would not find the Court's assessment of Bass's claims debatable or wrong. The Court shall therefore decline to issue a certificate of appealability.

## CONCLUSION & ORDER

For the reasons stated above, the Court ORDERS that Bass's § 2255 Motion is DENIED.

IT IS FURTHER ORDERED that this Court DECLINES TO ISSUE A CERTIFICATE OF

13

APPEALABILITY.

      IT IS SO ORDERED.

Dated:  February 24, 2017                          s/Sean F. Cox
                                                          Sean F. Cox
                                                          U. S. District Judge

I hereby certify that on February 24, 2017, the foregoing document was served on counsel of record via electronic means and upon Gerald Bass via First Class mail at the address below:

Gerald Bass 15974039
GILMER FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 6000
GLENVILLE, WV 26351

                                                          s/J. McCoy
                                                          Case Manager